Commonwealth, Appellant, *v.* Clelland.

Argued November 15, 1973. Before WRIGHT, P. J., WATKINS, JACOBS, HOFFMAN, CERCONE, and SPAETH, JJ. (SPAULDING, J., absent.)

Before MARINO, J.

*Walter W. Gregory, Jr.,* Assistant District Attorney, with him *Jess D. Costa,* District Attorney, for Commonwealth, appellant.

*Eugene J. Julian,* Assistant Public Defender, for appellee.

OPINION BY WATKINS, P. J., April 3, 1974:

This is an appeal by the Commonwealth from an order of the Court of Common Pleas of Washington County, suppressing certain evidence as obtained in violation of the Fourth Amendment of the United States Constitution. The evidence is necessary for the Commonwealth to proceed.

On the evening of November 11, 1972, several local policemen were called to the scene of the incident by another part-time policeman who had seen several vehicles travelling past his home on a private road which terminated in a dead end. The policeman had received several complaints of people illegally dumping garbage in the area.

Upon arriving at the scene, the police officers noticed several vehicles parked on the road. There were two van type vehicles and two automobiles. Eleven young men and women were milling in and about the vehicles. One of the police officers approached the group and, using his flashlight, looked into one of the vehicles. In so doing, he noticed a small packet of leaves on the floor of the front seat of the vehicle. The Chief of Police was called to look and he discovered two plastic bags which he suspected contained drugs. He seized the bags and arrested the appellee. No consent had been given by the appellee and no search warrant had been obtained. A laboratory analysis confirmed that the bags contained marijuana. The owner of the vehicle, Edward W. Clelland, was charged with possession of a controlled substance. The appellee moved for suppression of the evidence. The court below suppressed the evidence. This appeal followed.

The Fourth Amendment to the United States Constitution is designed to protect persons from unreasonable searches and seizures, thereby protecting their privacy. It mandates, as a general rule, that a search warrant must be obtained before a search of a person

or his property can be lawfully made by an enforcement officer. However, the law had long recognized several exceptions to this rule whereby certain types of searches can be reasonably and lawfully made without a search warrant.

One of these exceptions is the "plain view doctrine" which provides that contraband in plain view of the officer can be seized without a warrant. *Commonwealth v. Rota,* 222 Pa. Superior Ct. 163, 292 A. 2d 496 (1972). The only requirement for the plain view doctrine is that the officer must have had the right to be in the position to have the view. *Commonwealth v. Watkins,* 217 Pa. Superior Ct. 332, 272 A. 2d 212 (1970).

Under the facts of this case, it is clear that the officer had the right to be where he was on that night when he first saw the suspicious bags. The officer had been summoned to privately owned piece of real estate by another officer who had complaints about illegal dumping of garbage in this private area.

Upon entering the area, in the company of several officers, he encountered a group of eleven people milling in and around several parked vehicles. Since this occurred on private property he had a duty to inquire as to the reason for their presence in the area. He also had a right to approach the group in order to question them and to look into the vehicles for the presence of others. Since it was dark, the use of an artificial light to look into the vehicle was justified. The contraband was discovered in plain view of the officer on the floor of the front seat of the vehicle. Certainly the officer could not reasonably be expected to ignore the suspicious looking packets of leaves in light of the circumstances. To do so would constitute a dereliction of duty. To require an officer to obtain a warrant while another officer prevented the people from leaving would be cumbersome and of questionable constitutional validity.

Under the circumstances of this case, the warrantless seizure of the marijuana was reasonable. In *Commonwealth v. Dobkin,* 223 Pa. Superior Ct. 432, 302 A. 2d 457 (1973), the facts are strikingly similar to the instant case. It was held that police officers were justified in making a warrantless seizure of marijuana observed on the floor of the defendant's parked vehicle. Emphasis was placed in this case, which is also true in our present case, that an automobile is of a highly mobile nature, and so was not subject to the same strict requirements of search and seizure as a person's home would be.

Judge PACKEL, speaking for a unanimous Court, distinguished *Coolidge v. New Hampshire,* 403 U.S. 443 (1971) and *Commonwealth v. Linde,* 448 Pa. 230, 293 A. 2d 62 (1972) :

". . . because of the factual circumstance that the search and seizure in this case involved actual contraband, and the car was unlocked at a temporary parking place from which it was readily removable. In accord with one or more of these reasons for distinguishing Coolidge are United States v. Morales, 440 F. 2d 1332 (5th Cir. 1971), cert. denied, 404 U.S. 873 (counterfeit money seen on seat justified jimmied opening of car) ; United States v. Menke, 468 F. 2d 20 (3rd Cir., 1972) (contraband being sought, car could have been moved by suspect's family and impractical to get a warrant).

"The indirect compliance with constitutional mandates sought by the suppression process does not justify the use of an inflexible test which under particular circumstances may or may not relate to the reasonableness of a search and seizure."

Order of the court below is reversed.