J-S13006-17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| CHRISTOPHER BAILEY | |
| Appellee | No. 1412 EDA 2016 |

Appeal from the Order April 12, 2016
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0000202-2016

BEFORE:  BENDER, P.J.E., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED JULY 17, 2017**

The Commonwealth of Pennsylvania appeals from the trial court's order granting Christopher Bailey's motion to suppress[1] a loaded firearm, found in the center console of a vehicle he was driving, seized during a warrantless search.  Here, the officers did not need a warrant to search Bailey's car because they had probable cause to believe that more contraband was inside the car.  Thus, we reverse and remand.

Philadelphia Police Officer Michael Copestick testified that at approximately 10:20 a.m. on December 22, 2015, he and his partner were

_____

[*] Former Justice specially assigned to the Superior Court.

[1] The Commonwealth has certified in its notice of appeal that the interlocutory suppression order terminates or substantially handicaps the prosecution.  **See** Pa.R.A.P. 311(d).

conducting routine patrol, in a marked police car, in the area of Ardleigh and East Rittenhouse Streets in Philadelphia. The officers observed Bailey, who was driving Eastbound on Rittenhouse Street in a white Ford Escape, "disregard a stop sign[.]" N.T. Suppression Motion, 4/12/16, at 8. Officer Copestick testified that he activated his vehicle's lights and sirens, and proceeded to conduct a vehicle stop. Bailey pulled his vehicle over immediately; the officers approached Bailey's vehicle on foot. *Id.*

As Officer Copestick approached the driver's side of the vehicle and Bailey lowered the driver's side window, he testified that he "immediately smelled an odor of marijuana" and that the odor was "heavy." *Id.* at 9, 20. Officer Copestick asked Bailey if he had a driver's license, to which he replied, "No." *Id.* The officer then asked Bailey to step out of the vehicle. As Bailey was getting out of the SUV, Officer Copestick observed a bag of marijuana in between the door and the driver's seat. *Id.* Bailey then went to the back of the police vehicle with Officer Copestick's partner, and Officer Copestick recovered the bag of marijuana. *Id.* Believing that there could have been more marijuana in the vehicle, Officer Copestick immediately "opened up the center console and [saw] a firearm." *Id.* at 11.

- 2 -

On April 8, 2016,[2] Bailey filed a motion to suppress, claiming that "[b]ecause the police seized the evidence from [his] car without a search warrant, and because no exception to the search warrant requirement was present, the evidence should be suppressed." Motion to Suppress, 4/8/16, at 1. After a hearing held on April 12, 2016, the court granted Bailey's motion to suppress. On April 15, 2016, the Commonwealth filed a motion to reconsider. On that same date, the court entered an order vacating its order granting suppression, pending reconsideration, and scheduled a hearing on the motion for April 25, 2016. On April 27, 2016, the trial court denied the Commonwealth's motion to reconsider. On May 11, 2016, the Commonwealth filed a timely notice of appeal from the trial court's suppression order.

On appeal, the Commonwealth raises the following issue: Did the lower court err in suppressing a firearm found in the center console of a car [Bailey] was driving where the police had probable cause to believe marijuana was in the car, and they found a weapon while searching for the marijuana? Commonwealth's Brief, at 4.

> When the Commonwealth appeals from a suppression order, this Court may consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the record as a whole, remains

_____

[2] Bailey originally entered a guilty plea to firearms not to be carried without a license, 18 Pa.C.S. § 6106(a)(1). However, the court granted his motion to withdraw the plea on March 10, 2016.

uncontradicted. In our review, we are not bound by the suppression court's conclusions of law, and we must determine if the suppression court properly applied the law to the facts. We defer to the suppression court's findings of fact because, as the finder of fact, it is the suppression court's prerogative to pass on the credibility of the witnesses and the weight to be given to their testimony.

*Commonwealth v. Hudson*, 92 A.3d 1235, 1241 (Pa. Super. 2014) (citations omitted).

Instantly, the Commonwealth contends that because Officer Copestick was justified in believing additional marijuana would likely be found in Bailey's car, i.e., probable cause was present, the officer's warrantless search of the console was permitted under the automobile exception to the warrant requirement and suppression was improper.

Until recently, in order for police officers to conduct a lawful search of an automobile without a warrant, the officers were required to have probable cause and exigent circumstances. *Commonwealth v. Hudson*, 92 A.3d 1235 (Pa. Super. 2014). However, in *Commonwealth v. Gary*, 91 A.3d 102 (Pa. 2014) (opinion announcing judgment of the Court), our Supreme Court adopted the federal automobile search incident to arrest exception. The Court's holding simplified the standard regarding vehicular searches and seizures in this Commonwealth. To effectuate this interest, the Court held:

> [I]n this Commonwealth, the law governing warrantless searches and seizures of motor vehicles is coextensive with federal law under the Fourth Amendment. **The prerequisite for a warrantless search of a motor vehicle is probable cause to search; no exigency beyond the inherent mobility of a**

- 4 -

**motor vehicle is required.** The consistent and firm requirement for probable cause is a strong and sufficient safeguard against illegal searches of motor vehicles, whose inherent mobility and the endless factual circumstances that such mobility engenders constitute a *per se* exigency allowing police officers to make the determination of probable cause in the first instance in the field.

*Id.* at 138 (emphasis added).

Our standard for determining whether probable cause exists is well settled:

Probable cause is made out when the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime. The question we ask is not whether the officer's belief was correct or more likely true than false. Rather, we require only a probability, and not a prima facie showing of criminal activity.

*Commonwealth v. Thompson*, 985 A.2d 928, 931 (Pa. 2009) (quotations and citations omitted). "Probable cause *does not require certainty*, but rather exists when criminality is one reasonable inference, not necessarily even the most likely inference." *Commonwealth v. Spieler*, 887 A.2d 1271, 1275 (Pa. Super 2005) (quotations omitted; emphasis added).

In *Hudson*, *supra*, officers lawfully stopped a vehicle for a broken tail light. While effectuating the stop, officers noticed the defendant reaching toward the center console of the vehicle. Upon reaching the vehicle, an officer asked for and obtained the defendant's license and vehicle registration. The officers then asked the defendant and the car's passengers to exit the vehicle, at which point the officers conducted a protective sweep

of the car for safety purposes. During the sweep, an officer opened the center console and saw three pill bottles; two bottles had the labels partially removed, while the third bottle's label was intact and bore defendant's name. The pill bottles were seized and the officers arrested defendant. Later, it was determined that the bottles contained prescription pain medication.

The trial court granted the defendant's motion to suppress. On appeal, our Court affirmed the suppression of evidence, stating:

> Here, the suppression court, after finding that the stop of the vehicle and the officers' protective sweep of the car were lawful, concluded that it was impossible for the officers in this case to determine that these prescription bottles contained illegal substances because the contents of the bottles were not immediately apparent.
>
> * * *
>
> We agree with the suppression court's conclusion that while the pill bottles themselves were in plain view, the contents of those bottles were not immediately apparent, and a pill bottle by itself is not contraband. The potentially incriminating contents of the pill bottles were not discovered until after they were improperly seized, searched, and tested, thereby proving that the "immediately apparent" requirement for the plain view exception had not been satisfied. *Id.*
>
> * * *
>
> []The two pill bottles that had their labels partially removed were next to a pill bottle with an intact label bearing Appellee's name, and the pill bottles alone were not "immediately apparent" as contraband. The fact that Appellee had pill bottles in his car, with one bearing his name, without more, did not place the contents of the bottles in plain view and did not establish probable cause.
>
> Pursuant to *Gary*, absent probable cause, the warrantless search of the pill bottles in Appellant's vehicle was unlawful, and based

- 6 -

on our standard of review, we discern no reason to overturn the suppression court's ruling. ***See Commonwealth v. Kelly***, [] 409 A.2d 21 (Pa. 1979) (plain view observation of [] prescription pill bottle containing foil packets did not give rise to probable cause to search defendant's vehicle as nature of [] pill bottle was not "immediately apparent" and police had no other indication of drug related activity).

***Hudson***, 92 A.3d at 1242-43 (citations to record omitted).[3]

_____

[3] The dissent would affirm the trial court's suppression order by relying on three specific cases; notably, each of these cases was decided *prior* to **Gary** – before adoption of the federal automobile exception. Moreover, the dissent's reliance on **Commonwealth v. Stoner**, 344 A.3d 633 (Pa. Super. 1975) is misplaced as it actually supports reversal of suppression under the facts of the case. In **Stoner**, our Court analogized the plain smell concept with the plain view doctrine, and held that the plain smell of marijuana, by an officer trained in identifying the substance by its smell, is sufficient to establish probable cause for a search of the vehicle as long as the officer is legally justified in being where he is. In fact, in **Stoner**, the Court stated, "The marijuana which was in plain view was sufficient to establish probable cause for the search of the car." ***Id.*** at 635. At that point, the Court held that under the law, the entire car could be searched based on the fact that the officer observed drugs in plain view. Merely because the Court iterated that it "need not base [its] decision solely on the evidence in plain view," ***id.***, does not mean that it did not make such a simplified holding. The further discussion regarding the "very strong odor of marijuana coming from inside the car" is superfluous; it provides additional justification for the search, but is not necessary to its central holding.

In **Commonwealth v. Bailey**, 545 A.2d 942 (Pa. Super. 1988), another case cited by the dissent, the arresting officer searched the interior of the defendant's vehicle after recovering apparent drugs in a baggie from the defendant's shirt pocket. As the Court states, "**Miranda** warnings were subsequently administered, whereupon [the] Officer placed the appellant in his vehicle and *proceeded to conduct a search of the Chevrolet sedan*." ***Id.*** at 943. "*During the course of this search* [the officer] detected a 'chemical-type smell.'" ***Id.*** At that point, the officer proceeded to search the trunk of the vehicle where he found more drugs and drug paraphernalia. ***Id.*** at 944. The issue on appeal in **Bailey** concerned the legality of the search of the locked trunk, *not* the passenger compartment as in our case. These factual distinctions are critical.
*(Footnote Continued Next Page)*

Here, like in **Hudson**, the stop of Bailey's vehicle was legal where Officer Copestick pulled over Bailey for a Motor Vehicle Code violation. **Commonwealth v. Ibrahim**, 127 A.3d 819 (Pa. Super. 2015). After pulling over the vehicle, Officer Copestick approached the car and "immediately" smelled a heavy odor of fresh marijuana upon reaching the driver's side window which "hit [him] right in the face." N.T. Suppression Hearing, 4/12/16, at 21. Officer Copestick then asked Bailey whether he had a driver's license, to which Bailey responded in the negative. At this point, Officer Copestick was justified in asking Bailey to step out of the vehicle. **See Commonwealth v. Reppert**, 814 A.2d 1196 (Pa. Super. 2002) (en banc) (during routine traffic stop, police officer may order driver out of vehicle for officer's safety).

---

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

Finally, the dissent cites to **Commonwealth v. Duell**, 451 A.2d 724 (Pa. Super. 1982), to advance the theory that a police officer needs to articulate specific facts to demonstrate probable cause "to believe that **more** contraband was in the vehicle." Dissenting Opinion, at 2. In **Duell**, a Commonwealth appeal, our Court found suppression of evidence seized from the defendant's automobile was not warranted where the officer smelled an odor of burning marijuana, but only saw a partially full bottle of wine on the floor of the car. In justifying the officer's seizure of a brown paper bag on the front seat of the car (which ultimately was determined to contain marijuana), our Court held that the officers "had probable cause to believe that the car **might** contain further contraband in the form of marijuana or alcohol." **Id.** at 725. Officer Copestick's belief that "there could have been more marijuana in the vehicle," N.T. Suppression Hearing, 4/12/16, at 11, is just as definitive as an officer's belief that a car "might" contain further contraband.

As the door opened and Bailey stepped out of the vehicle, Officer Copestick saw, in plain view, a small, clear bag of what he suspected to be marijuana between the driver's seat and door. Unlike the facts in **Hudson**, the unlawful nature of the drugs *was* immediately apparent to Officer Copestick, who had come into contact with marijuana every day in the eight years he had been on the force. **See Commonwealth v. Evans**, 685 A.2d 535 (Pa. 1996) (experienced officer's observations of either drugs or containers commonly known to hold drugs is one factor to be considered in determining whether probable cause exists for warrantless arrest). Officer Copestick properly retrieved the bag in plain view and placed it into his pocket. **See Commonwealth v. Clelland**, 323 A.2d 60, 61 (Pa. Super. 1974) (holding "warrantless seizure" of marijuana observed in plain view inside vehicle supported by probable cause).[4] At this point, under the

---

[4] Under the facts of this case, a full search of Bailey's vehicle was also justified as a search incident to arrest. While it is true that the Commonwealth did not address this issue in its brief, this is not dispositive. **In In re I.M.S.**, **supra**, this Court found that a search incident to arrest would have been legal, despite the issue not being presented in the Commonwealth's brief.

> Moreover, in this case . . . police did have probable cause to believe that [Defendant] was committing a crime. Here, the officer had probable cause to arrest [Defendant] after he admitted to possessing drugs. The officer, therefore, would have been authorized to conduct a search incident to arrest of the backpack.

**Id.** 124 A.3d at 317. Similarly, here, police had probable cause to arrest Bailey once they discovered the marijuana in plain view in the vehicle. *(Footnote Continued Next Page)*

totality of the circumstances, we find that Officer Copestick had established sufficient probable cause for a search of the entire vehicle after he observed illegal drugs, in plain view, and where he believed that the car likely contained more marijuana.[5] **See In re I.M.S.**, 124 A.3d 311 (Pa. Super. 2015). Accordingly, after applying the dictates of **Gary**, we hold the trial court erred in suppressing the evidence (gun) retrieved from Bailey's vehicle; the trial court did not properly apply the law to the facts of the case. **Hudson**, **supra**.[6]

_____

*(Footnote Continued)*

Officer Copestick, therefore, would have been authorized to conduct a search of the vehicle incident to arrest.

[5] Although not binding, we also recognize that several other jurisdictions have held that the discovery of drugs provides probable cause to search the *entire* vehicle without a warrant, where officers have probable cause to believe that the vehicle contains contraband. **See Johnson v. State**, 157 A.3d 338 (Md. App. 2017); **United States v. McCarty**, 612 F.3d 1020 (8th Cir. 2010); **McDaniel v. State**, 990 S.W.2d 515 (Ark. 1999); **United States v. Powell**, 732 F.3d 361 (5th Cir. 2013); **State v. Buckner**, No. 21892 2007 Ohio App. LEXIS 3877 (Ohio Aug. 24, 2007).

[6] The dissent contends that the probable cause to further search the interior of Bailey's vehicle would have been established had Officer Copestick simply testified that "the small amount of marijuana in the bag did not align with the strength of the odor of marijuana that he smelled." Dissenting Opinion, at 3. However, making officers use these "magic words" to establish probable cause after they have seen illegal substances in plain view would create a dangerous precedent regarding the governmental interest in confiscating illegal substances. For example, based on the dissent's reasoning, a clever drug dealer could intentionally travel with one small bag of marijuana (or any illegal substance) in plain view in case he or she is pulled over, while secretly carrying large amounts elsewhere in the vehicle. If the officer does not explicitly testify to his or her certainty that more drugs are suspected to be in the vehicle, any further search would be deemed
*(Footnote Continued Next Page)*

Order reversed.  Case remanded.  Jurisdiction relinquished.[7]

Justice Fitzgerald concurs in the result

President Judge Emeritus Bender files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/17/2017

_(Footnote Continued)_ ────────────

illegal.  In **_Gary_**, our Supreme Court sought to eliminate exactly that kind of hyper-technicality and to simplify the law surrounding search and seizure of automobiles.  In short, the dissent's logic "turn[s] on small details in the midst of a complex factual scenario."  **_Gary_**, 91 A.3d at 137.

[7] Interestingly enough, at the conclusion of the suppression hearing in the instant case, the Honorable Tracy Brandeis-Roman explained:

> Officer Copestick, I know that it's very confusing regarding what you can search, when can you not search.  There [is] a change in the law.  I know that it's confusing, and I think it's no reflection upon you or your police work.  None.

N.T. Suppression Hearing, 4/12/16, at 46.